IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ROBERT BACNIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:12-CV-801 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Robert Bacnik brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claims for social security disability benefits and supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Mr. Bacnik filed applications for disability benefits and supplemental security income in March 2009. (Tr. 178-85.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 74-81, 86-94.) Mr. Bacnik requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 104-05.) After a hearing, the ALJ determined that Mr. Bacnik was not disabled

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

under the Act. (*Id.* at 16-25.) The Appeals Council denied review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

**II. STANDARD FOR REVIEW**

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Mr. Bacnik is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

**III. THE ALJ'S DECISION**

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Mr. Bacnik had not engaged in substantial gainful activity since the alleged onset date of September 19, 2008. (Tr. 18.) The ALJ next found at step two that he had the following severe impairments: degenerative disc disease, bipolar disorder, mood disorder, attention deficit hyperactivity disorder ("ADHD"), and a history of polysubstance abuse. (*Id.*) At step three, the ALJ found that Mr. Bacnik did not have an impairment or combination of impairments listed in,

or medically equal to, one listed in Appendix 1. (*Id.*) The ALJ then determined that Mr. Bacnik retained the Residual Functional Capacity ("RFC") to perform medium work so long as it was limited to simple, routine, repetitive tasks with no quota-based work. (*Id.* at 20.) At the fourth step, the ALJ determined that he was unable to perform his past relevant work. (*Id.* at 23.) At step five, the ALJ determined that there were jobs which Mr. Bacnik could perform consistent with his RFC, age, education, and work experience. (*Id.* at 24.)

**IV. ISSUES AND ANALYSIS**

Mr. Bacnik first contends that the ALJ erred by failing to give controlling weight to the opinion of a treating psychiatrist. (Docket Entry 12 at 2-5.) Second, he contends that the ALJ erred by failing to conduct the detailed assessment required by Social Security Ruling ("SSR") 96-8p and for failing to include all of his moderate limitations into the RFC and the hypothetical question to the Vocational Expert ("VE"). (*Id.* at 5-11.) Last, Mr. Bacnik argues that the ALJ erred by failing to order an IQ test. (*Id.* at 11-13.)

**A. The ALJ Properly Evaluated Dr. Jackson's Medical Opinion.**

Dr. Nathan Jackson, a treating psychiatrist, found Mr. Bacnik moderately restricted in his daily activities, markedly limited in his social functioning, and found further that he had repeated episodes of decompensation and deficiencies of concentration, persistence, and pace that frequently prevented the timely completion of tasks. (Tr. 458.) He also determined that Mr. Bacnik was markedly impaired in his ability to understand and remember detailed instructions, perform activities within a schedule, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek, accept instructions/criticism from supervisors, get along with co-workers/peers, be aware of normal

3

hazards, and set realistic goals or plan independently. (*Id.* at 459.) Dr. Jackson further concluded that Mr. Bacnik was extremely impaired in his ability to carry out detailed instructions, maintain attention and concentration, and work in coordination with others. (*Id.*) He concluded that Mr. Bacnik needed consistent supervision and support from a stable/same supervisor to follow tasks beyond three-steps. (*Id.*)

The ALJ gave Dr. Jackson's medical opinion "limited weight" because he found these limitations were (1) "overly restricted and not consistent with the medical evidence in its entirety," (2) "not in proportion to [Dr. Jackson's] own treatment notes" and "the degree of treatment required," and (3) inconsistent with "the observations of the other providers and consultative examiners." (*Id.* at 23.) Mr. Bacnik now contends that the ALJ erred by failing to give controlling weight to Dr. Jackson's medical opinion. (Docket Entry 12 at 2-5.)

The treating physician rule, 20 C.F.R. §§ 404.1527(c), 416.927(c), generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment.[3] Yet, a treating source opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4) and 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).[4]

---

[3] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). This Order reflects the nominal regulatory renumbering of the treating physician rule.

[4] According to Mr. Bacnik, the ALJ's reasoning for rejecting Dr. Jackson's opinion was legally deficient because the ALJ failed to cite to "specific contradictory evidence." (Docket Entry 12 at 4.) The "treating physician rule" as stated by Mr. Bacnik is no longer the governing standard.

The ALJ's conclusion that Dr. Jackson's restrictions were inconsistent with the record is supported by substantial evidence, and that evidence was described by the ALJ at length. (Tr. 20-23.) First, the evidence from Dr. Jackson's practice, Freedom House, does not support his proposed restrictions. (Tr. 400-429, 533-40.) Mr. Bacnik's December 4, 2008 intake form records a Global Assessment of Functioning ("GAF") score of 51, which is considered demonstrative of moderate difficulties in social or occupational functioning. (*Id.* at 423.) *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, 34 (4th ed. Text revision 2000).[5] On February 29, 2009, Dr. Kendall Warden noted that Mr. Bacnik's therapy was helpful, that he had no depressive or manic episodes after discontinuing his medication, and that he was caring for his ill father. (Tr. 414.) Mr. Bacnik was observed to be alert and oriented. (*Id.* at 415.) He also demonstrated normal speech, a euthymic mood, an appropriate affect, good insight and judgment, a logical thought process, and a GAF score between 60-65. (*Id.* at 415.) Mr. Bacnik was also soon seeking work, which suggests he did not view his pain as disabling. (*Id.* at 405.) *See Bently v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995).

On March 17, 2009, Dr. Warden noted that Mr. Bacnik demonstrated good results from psychotherapy and presented a stabilized mood, was symptom-free, and was seeking employment. (*Id.* at 404.) On April 8, 2009, Mr. Bacnik had a stabilized mood, an excellent response to his medication, and greater focus and organization. (*Id.* at 403.) A year later, Mr.

---

*See Stroup v. Apfel*, No. 96–1722, 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished); *Shrewsbury v. Chater*, No. 94–2235, 1995 WL 592236, at *2 n. 5 (4th Cir. Oct. 6, 1995) (unpublished). As explained above, where—as here—a physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight.

[5] A new edition of the leading treatise discontinued use of the GAF. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

Knop, an addiction counselor, observed that Mr. Bacnik's thoughts were well organized, his mood was stable, he was looking for work, and was working to enroll in CNA classes. (*Id.* at 540.) Soon thereafter, Mr. Bacnik was scheduled to begin his classes. (*Id.* at 539.) He was doing odd jobs and was enjoying the social interaction and "making some spending money." (*Id.*) He also demonstrated good insight and mood. (*Id.*) In the summer of 2010, Mr. Bacnik continued to demonstrate emotional stability. (*Id.* at 534-37.) The findings of consulting physician Dr. Carol M. Gibbs also support the ALJ's conclusion that Mr. Bacnik was not restricted in the manner Dr. Jackson suggested. (*Id.* at 396-97 (limited to simple, repetitive instructions and tasks but could get along with others).)

To support his argument, Mr. Bacnik cites evidence generated in prior disability claims (Docket Entry 12 at 3-4 citing Tr. 347, 492-94), which were ultimately denied, and which demonstrate his condition between 2004 and 2006. This evidence predates Mr. Bacnik's current alleged onset date of disability of September 19, 2008 by a number of years and is of limited value in ascertaining his condition during the time in question. (Tr. 178.)

Mr. Bacnik does point to some evidence generated during the relevant period—such as a 2009 consultative examination, also performed by Dr. Gibbs. (Docket Entry 12 at 4, citing Tr. 395-97.) However, Dr. Gibbs largely recited Mr. Bacnik's own self-reporting, which "does not elevate those statements to a medical opinion." *See Morris v. Barnhart*, No. 03–1332, 2003 WL 22436040, at *4 (3d Cir. Oct. 28, 2003) (citing *Craig*, 76 F.3d at 590 n.2).

**B. The RFC, As Presented to the VE, Is Supported by Substantial Evidence.**

Mr. Bacnik next contends that the ALJ erred by failing to include in his RFC a restriction to limited interpersonal interactions and by failing to include this limitation in a hypothetical to

6

the VE. (Docket Entry 12 at 5-6.) In pertinent part, non-examining state agency psychologist Dr. Noles concluded in May 2009 that Mr. Bacnik could work with limited interpersonal interaction, if limited further to the performance of simple, routine, repetitive tasks. (Tr. 454.) A second state agency psychologist, Dr. Charles, also concluded in September 2009 that Mr. Bacnik could perform simple, routine, repetitive tasks. (Tr. 471.) Dr. Charles, however, did not include a limitation on personal interactions and instead concluded that Mr. Bacnik could "act appropriately and respond adequately for social interaction." (*Id.*)

It is the job of the ALJ to resolve evidentiary conflicts. Here, the ALJ adopted the conclusions of both Drs. Noles and Charles on the need for a limitation to simple, routine, repetitive tasks, but implicitly rejected Dr. Noles' limitation on interpersonal interactions in favor of Dr. Charles' conclusion that no such limitation was necessary. This conclusion is bolstered by the fact that immediately after pointing out that the opinions of Dr. Noles and Dr. Charles limited Mr. Bacnik to simple, routine, repetitive work, the ALJ also explicitly cited and gave "great weight" to the conclusion of state agency examining consultant Gibbs that Mr. Bacnik would not have trouble "getting along with others from an anger management perspective."[6] (Tr. 397, 23.) Mr. Bacnik has failed to demonstrate that the ALJ committed prejudicial error by adopting the opinion of Dr. Charles and Dr. Gibbs over one part of Dr. Noles's opinion. *See Craig*, 76 F.3d at 589.[7]

---

[6] The "great weight" attributed to Dr. Gibb's opinion was to her 2009—not her 2004—findings. (Tr. 23.)

[7] An ALJ is not required to adopt every opinion in a non-examining medical expert's report, even when according the report great weight overall. *See, e.g.*, *Taylor v. Colvin*, 2013 WL 6162527, at * 14–15 (N.D. Ohio Nov. 22, 2013); *Newsome v. Astrue*, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012).

Mr. Bacnik next argues that the ALJ failed to comply with SSR 96-8p (Docket Entry 12 at 6-8), which provides that "The mental RFC assessment . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 . . . and summarized on the PRTF." SSR 96–8P, 1996 WL 374184, at *4 (July 2, 1996). However, the ALJ complied with SSR 96-8p, because the state agency psychologists evaluated Mr. Bacnik's functioning based on the twenty itemized areas in Social Security Form 4734 (Tr. 452-454, 469-71) and, based on those items, set forth their ultimate conclusions as described above (*id.* at 20). The ALJ's RFC determination is consistent with the recommendations of the non-examining consultants that Mr. Bacnik be limited to simple, routine, repetitive tasks and is consistent with Dr. Charles' conclusion that an interpersonal interaction limitation was unnecessary.

Mr. Bacnik likewise contends that the ALJ erred by failing to incorporate into the RFC, and by failing to present to the VE, various moderate limitations found in the state agency psychologists' mental RFC assessment. (Docket Entry 12 at 6-7.) However, the ALJ was under no obligation to do this. It is the conclusions of state agency psychologists set forth in Section III of Social Security Form 4734, and not their initial summary conclusions set forth in Section I, that are ultimately relevant to the calculation of a plaintiff's mental RFC.[8]  *See* Program Operations Manual System ("POMS") 24510.060(B.2.a) ("*Section I is merely a worksheet . . . [and] does not constitute the RFC assessment*") (emphasis in original). By taking into account

---

[8] *See, e.g.*, *Norris v. Astrue*, NO. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov 14, 2008) (unpublished); *Bates v. Astrue*, No. 07-074-JJF, 2008 WL 1736819, at *11 (D. Del. Apr. 11, 2008) (unpublished); *Malueg v. Astrue*, No. 06-C-676-S, 2007 WL 5480523, *7 (W.D. Wis. May 30, 2007) (unpublished); *Lichtenstein v. Barnhart*, No. 05-111-P-H, 2006 WL 1554630, at *3 (D. Me. Jun. 1, 2006) (unpublished).

and generally adopting the non-examining state agency consultants' evaluation of the twenty itemized areas, the ALJ complied with her obligation to fully evaluate Mr. Bacnik's mental functioning. Though there is some case law from other jurisdictions supporting plaintiff's position (*see* Docket Entry 12 at 9 (collecting cases)), the more persuasive cases hold—as explained—that only the Section III narrative is relevant in this regard.[9] Mr. Bacnik's arguments lack merit.

### C. The ALJ Adequately Developed the Record.

Last, Mr. Bacnik asserts that the ALJ erred by not ordering an IQ test. (Docket Entry 12 at 11-13.) The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty includes developing the claimant's "complete medical history." 20 C.F.R. §§ 404.1512(d), 416.912(d). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The decision of an ALJ will not be overturned for failure to fully and fairly develop the record unless "such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir.1980) (citations omitted). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also King v. Califano*, 599 F.2d 597,

---

[9] *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3d Cir. 2010); *Israel v. Astrue*, 494 F. App'x 794, 797 (9th Cir. 2012); *Pippen v. Astrue*, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug 24, 2010) (unpublished), *adopted by* 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010) (unpublished); *Berry v. Astrue*, No. 1:08–cv–00005, 2009 WL 50072, at *14-15 (W.D.Va. Jan. 7, 2009) (unpublished).

599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Here, nothing significant in the record suggests that Mr. Bacnik had borderline intellectual functioning during the relevant period. Mr. Bacnik points to Dr. Gibbs' 2004 and 2006 diagnosis of "Rule Out Borderline Intellectual Functioning," and her comment that psychological testing would be useful, and points further to a state agency consultant's April 2006 conclusion that he was markedly limited in his ability to understand, remember, and carry out detailed instructions. (Docket Entry 12 at 11-13 referencing Tr. 345, 347, 493-94.) But this evidence was created in January 2004 through April 2006 in an earlier claim, which was denied, and pre-dates considerably the September 19, 2008 alleged onset date.

In March 2009, Mr. Bacnik did tell consulting psychologist Gibbs that he thought he had been in one or two special education classes and that he "had trouble with math." (Tr. 395.) However, Dr. Gibbs found Mr. Bacnik was "in the average range of intellectual functioning," (*id.*), and nothing in his remaining diagnosis indicated otherwise. (*Id.* at 397.) This is insufficient to demonstrate that the ALJ failed to appropriately develop the record, especially given that Mr. Bacnik does not challenge the ALJ's step-two determination—listing his severe impairments—or evince that this alleged impairment significantly limited his physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

V. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Therefore, it is **ORDERED** that Mr. Bacnik's Motion for Judgment on the Pleadings (Doc. 11) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 15) is **GRANTED**, and the final

decision of the Commissioner is upheld. A Judgment dismissing this action will be entered contemporaneously with this Order.

This 17th day of July, 2014.

_____
UNITED STATES DISTRICT JUDGE